UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

|  |  |  |
|---|---|---|
| TIMOTHY MILES, on behalf of himself and others similarly situated, | : : : : : : : : : : : : : | Case No.: 4:20-cv-1186 <br><br> Class Action <br><br> Jury Trial Demanded |
| Plaintiff, |  |  |
| vs. |  |  |
| MEDICREDIT, INC., |  |  |
| Defendant. |  |  |

**Nature of the Action**

1. Timothy Miles ("Plaintiff") brings this class action against Medicredit, Inc. ("Medicredit") under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692d.

2. Section 227(b)(1)(A)(iii) of the TCPA sets forth restrictions on the use of automated telephone equipment and prerecorded voice calls, and provides in pertinent part:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> \*\*\*\*\*
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

3. Upon information and belief, Medicredit routinely violates 47 U.S.C. § 227(b)(1)(A)(iii) by placing non-emergency telephone calls to consumers' cellular telephone numbers by using an automatic telephone dialing system ("ATDS") and an artificial or prerecorded

1

voice, without the prior express consent of the consumers, in that Medicredit repeatedly placed calls to wrong or reassigned telephone numbers that do not belong to the intended recipients of the calls. *Accord Lemos v. Credit One Bank, N.A.*, 960 F.3d 1164, 1166 (9th Cir. 2020) ("The principal question in this case is whether Credit One can escape liability under the TCPA because the party it intended to call (its customer) had given consent to be called, even though the party it actually called had not. Consistent with every circuit to have addressed this issue, we hold that this argument fails under the TCPA's text, most naturally read.").

4. Of note, Medicredit previously settled two class actions in connection with which the plaintiffs asserted claims under the TCPA nearly identical to those Plaintiff now asserts. *See Martinez et al. v. Medicredit, Inc.*, No. 4:16-cv-01139-ERW, Doc. 105 (E.D. Mo. May 15, 2018) (Webber, J.); *Prater v. Medicredit, Inc. and The Outsource Group, Inc.*, No. 4:14-cv-00159-ERW, Doc. 89 (E.D. Mo. Dec. 7, 2015) (Webber, J.).

5. Section 1692d of the FDCPA provides:

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

*****

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

6. Upon information and good faith belief, Medicredit routinely violates 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse consumers in connection with the collection of debts, in that it continues to place calls to consumers for the purpose of debt collection even after being informed that it is placing calls to the wrong person and telephone number.

**Jurisdiction**

7. This Court has subject matter jurisdiction under 47 U.S.C. § 227(b)(3), 15 U.S.C. § 1692k(d), and 28 U.S.C. § 1331.

8. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where Medicredit resides in this District, and where a substantial part of the events giving rise to this action occurred in this District.

**Parties**

9. Plaintiff is a natural person who at all relevant times resided in Chapel Hill, North Carolina.

10. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

11. Medicredit is a debt collection company with principal offices located in Earth City, Missouri.

12. Medicredit identifies itself as a debt collector in its communications with consumers, and is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

13. Parallon Business Solutions, LLC ("Parallon") owns Medicredit.

14. Parallon shares senior management with Medicredit, including having the same president, vice president, and treasurer.

15. Parallon touts itself as "one of the country's largest premier revenue cycle partners, with more than 18,100 employees serving more than 4,300 hospitals and physician practices."[1]

16. Annually, Parallon collects "more than $51 billion and interact[s] with 49 million patients."[2]

---

[1]   https://parallon.com/about-us (last visited Aug. 24, 2020).

[2]   https://parallon.com/about-us (last visited Aug. 24, 2020).

17. Parallon operates at least seven call centers.[3]

18. Parallon uses "automated dialers, IVR, and sophisticated workflows" as part of its collection practices.[4]

19. Medicredit has a Public Utility Commission of Texas Automatic Dial Announcing Device permit, no. 150005, which it first obtained in 2015 and last renewed in January 2020.[5]

20. Medicredit's Public Utility Commission of Texas Automatic Dial Announcing Device permit is registered through Deron Brown, senior counsel of Parallon.

## Factual Allegations

21. In an attempt to contact a third party named "Amy" for the purpose of attempting to collect a debt in default, Medicredit placed numerous calls to cellular telephone number (314) XXX-2368—a number for which Plaintiff is the subscriber and customary user.

22. Medicredit began placing calls Plaintiff's cellular telephone number in or around January 2020, and the calls continued into March 2020.

23. In connection with its calls to Plaintiff's cellular telephone number, Medicredit also delivered prerecorded voice messages to Plaintiff's cellular telephone voice mail.

24. By way of example, one of the prerecorded voice messages Medicredit delivered to Plaintiff's cellular telephone voice mail stated:

> Hello, we are calling from Medicredit on behalf of Missouri Baptist Medical Center. This is a call from a debt collector. Please return our call at 1-800-888-2238 Monday through Friday during normal business hours. Thank you.

---

[3] https://parallon.com/about-us/people/don-wright (last visited Aug. 24, 2020).

[4] https://parallon.com/services/early-out-self-pay-services (last visited Aug. 24, 2020).

[5] *See* https://www.puc.texas.gov/industry/communications/directories/adad/report_adad.aspx?ID=ADSQL01DB1245703600001 (last visited Aug. 24, 2020).

25. Upon information and good faith belief, Medicredit's records will identify each call it placed, and each prerecorded voice message it delivered, to Plaintiff's cellular telephone number.

26. Medicredit placed calls to Plaintiff's cellular telephone number from telephone number (800) 888-2238, a number assigned to Medicredit.

27. When dialed, telephone number (800) 888-2238 plays a prerecorded voice message greeting that begins: "Hello, thank you for calling Medicredit Incorporated . . . ."

28. Medicredit placed each of its calls to Plaintiff's cellular telephone number in an effort to contact and collect a debt allegedly owed by a third party, unknown to Plaintiff, named "Amy".

29. On at least one occasion, Plaintiff answered Medicredit's call and, after a delay, was connected to one of Medicredit's representatives.

30. Upon being connected to one of Medicredit's representatives, Plaintiff explained that Medicredit had the wrong number, and that he did not know the person Medicredit was attempting to reach.

31. Despite informing Medicredit that it was placing calls to the wrong person, Medicredit continued to place calls to Plaintiff's cellular telephone number.

32. Upon information and good faith belief, Medicredit utilizes a "WN" notation—signifying "wrong number"—when a call recipient informs Medicredit that it placed a call to a wrong number.

33. Upon information and good faith belief, and in light of the frequency, character, number, and nature of the calls, including Medicredit's use of an artificial or prerecorded voice, Medicredit used an ATDS, as defined by 47 U.S.C. § 227(a)(1), to place its calls to Plaintiff's cellular telephone number.

34. Upon information and good faith belief, Medicredit utilizes a predictive dialer to place outbound collections calls.

5

35. A predictive dialer is a type of ATDS that has the capacity to store numbers to be called, and to dial such numbers automatically (even if the system must be turned on or triggered by a person). *See Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018); *see also Pederson v. Donald J. Trump for President, Inc.*, --- F. Supp. 3d ----, 2020 WL 3047779, at *5 (D. Minn. June 8, 2020) ("The Eighth Circuit has not yet weighed in on this issue, and the Court finds the logic of the Second and Ninth Circuits to be more persuasive. Under the Trump Campaign's theory (and Eleventh Circuit precedent), software that could dial a number at random from a phonebook (imagining that there were still such things as phonebooks) would not constitute an autodialer, because a phonebook is nothing more than a list of numbers compiled by humans. The Court sees no reason why software must generate numbers itself, and will not read such a limitation into the text of the statute.").

36. Upon information and good faith belief, Medicredit uploads telephone numbers to be called to its dialer, which stores the numbers to be called and automatically dials the numbers based on the availability of Medicredit's customer service representatives to field connected calls.

37. Upon information and good faith belief, Medicredit used such hardware and software to place the calls at issue to Plaintiff's cellular telephone number.

38. Medicredit did not have Plaintiff's prior express consent to place any calls to his cellular telephone number.

39. Plaintiff never provided his cellular telephone number to Medicredit.

40. Plaintiff never had any business relationship with Medicredit.

41. Plaintiff was never a patient at Missouri Baptist Medical Center.

42. Plaintiff does not, and never did, owe money to Missouri Baptist Medical Center.

43. Medicredit did not place any calls to Plaintiff's cellular telephone number for emergency purposes.

6

44. Upon information and good faith belief, Medicredit placed its calls to Plaintiff's cellular telephone number under its own free will.

45. Upon information and good faith belief, Medicredit had knowledge that it was using an ATDS, and an artificial or prerecorded voice, to place its calls to Plaintiff's cellular telephone number.

46. Plaintiff suffered actual harm as a result Medicredit's calls and prerecorded voice messages in that he suffered an invasion of privacy, an intrusion into his life, a private nuisance, and was forced to spend time attempting to get Medicredit's calls to stop.

47. Upon information and good faith belief, Medicredit, as a matter of pattern and practice, uses an ATDS, and an artificial or prerecorded voice, to place calls, absent prior express consent, to telephone numbers assigned to a cellular telephone service.

## Class Action Allegations

48. Plaintiff bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b) on behalf of himself and two classes of similarly situated individuals as defined below:

### TCPA Class

> All persons and entities throughout the United States (1) to whom Medicredit, Inc. placed, or caused to be placed, at least one call (2) directed to a number assigned to a cellular telephone service, by (3) using an automatic telephone dialing system or an artificial or prerecorded voice, (4) from December 16, 2017 through and including the date of class certification, (5) where the called party did not have an account with Medicredit, Inc.

### FDCPA Class

> All persons and entities throughout the United States (1) to whom Medicredit, Inc. placed, or caused to be placed, calls, (2) within one year preceding the date of this complaint through and including the date of class certification, (3) and in connection with the collection of a consumer debt, (4) after the called party informed Medicredit, Inc. that it was calling the wrong person.

Excluded from the classes are Medicredit, its officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Medicredit has or had a controlling interest.

49. The proposed classes are so numerous that, upon information and belief, joinder of all members is impracticable.

50. The exact number of members of the classes is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery.

51. The proposed classes are ascertainable because they are defined by reference to objective criteria.

52. In addition, and upon information and belief, the cellular telephone numbers of all members of the classes can be identified in business records maintained by Medicredit and third parties.

53. Plaintiff's claims are typical of the claims of the members of the classes because all of the class members' claims originate from the same conduct, practice and procedure on the part of Medicredit, and Plaintiff possesses the same interests and has suffered the same injuries as each class member.

54. Like all members of the proposed TCPA Class, Plaintiff received telephone calls from Medicredit using an ATDS, or an artificial or prerecorded voice, without his consent, in violation of 47 U.S.C. § 227.

55. Further, like all members of the proposed FDCPA Class, Plaintiff received telephone calls from Medicredit in connection with the collection of a consumer debt that he did not owe, after informing Medicredit that it was placing calls to the wrong person or telephone number.

56. Plaintiff will fairly and adequately protect the interests of the members of the classes and has retained counsel experienced and competent in class action litigation.

57. Plaintiff's counsel was previously certified as class counsel in TCPA class actions against Medicredit.

58. Plaintiff has no interests that are contrary to or in conflict with the members of the classes that he seeks to represent.

59. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.

60. Furthermore, as the damages suffered by individual members of the classes may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the classes to individually redress the wrongs done to them.

61. There will be little difficulty in the management of this action as a class action.

62. Issues of law and fact common to the members of the classes predominate over any questions that may affect only individual members, in that Medicredit has acted on grounds generally applicable to each class.

63. Among the issues of law and fact common to the classes are:

   a. Medicredit's violations of the TCPA as alleged in this class action complaint;

   b. Medicredit's violations of the FDCPA as alleged in this class action complaint;

   c. Medicredit's use of an ATDS;

   d. Medicredit's practice of placing calls to wrong or reassigned telephone numbers;

   e. Medicredit's practice of continuing to call consumers after being informed it placed calls to the wrong number or wrong person;

   f. Medicredit's status as a debt collector as defined by the FDCPA; and

   g. the availability of statutory damages.

64. Absent a class action, Medicredit's violations of the law will be allowed to proceed without a full, fair, judicially supervised remedy.

### Count I: Violations of 47 U.S.C. § 227(b)(1)(A)(iii)

65. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-64.

66. Medicredit violated 47 U.S.C. § 227(b)(1)(A)(iii) by utilizing an ATDS to place telephone calls to Plaintiff's cellular telephone number, without his consent.

67. Medicredit separately violated 47 U.S.C. § 227(b)(1)(A)(iii) by utilizing an artificial or prerecorded voice in connection with calls it placed to Plaintiff's cellular telephone number, without his consent.

68. As a result of Medicredit's violations of 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiff and the TCPA Class are entitled to damages in an amount to be proven at trial.

### Count II: Violations of 15 U.S.C. § 1692d and § 1692d(5)

69. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-64.

70. Medicredit violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the collection of consumer debts.

71. Medicredit violated 15 U.S.C. § 1692d(5) by causing Plaintiff's cellular telephone to ring repeatedly or continuously, and by engaging Plaintiff in telephone conversations repeatedly or continuously, with intent to annoy, abuse, or harass Plaintiff at the called number.

72. Medicredit did so by repeatedly dialing Plaintiff's cellular telephone number after being informed it was calling the wrong person.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

    (a) Determining that this action is a proper class action and designating Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure;

(b) Adjudging that Medicredit violated 47 U.S.C. § 227(b)(1)(A)(iii), and enjoining Medicredit from continuing to place calls to Plaintiff's cellular telephone number, from placing calls to consumers' cellular telephone numbers by using an ATDS or an artificial or prerecorded voice without the prior express consent of the consumers, and from committing further violations of 47 U.S.C. § 227(b)(1)(A)(iii);

(c) Adjudging that Medicredit violated 15 U.S.C. § 1692d and 15 U.S.C. § 1692d(5), and enjoining Medicredit from further violations of 15 U.S.C. § 1692d and 15 U.S.C. § 1692d(5) with respect to Plaintiff and the other members of the FDCPA Class;

(d) Awarding Plaintiff and members of the TCPA Class statutory damages pursuant to 47 U.S.C. § 227(b)(3) in an amount up to $1,500.00 per violation;

(e) Awarding Plaintiff and members of the FDCPA Class statutory damages pursuant to 15 U.S.C. § 1692k;

(f) Awarding Plaintiff and members of the classes their reasonable costs, expenses, and attorneys' fees incurred in this action, including expert fees, pursuant to 15 U.S.C. § 1692k and Rule 23 of the Federal Rules of Civil Procedure; and

(g) Awarding other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: September 1, 2020            /s/ Anthony LaCroix
                                    Anthony LaCroix
                                    LaCROIX LAW FIRM, LLC
                                    1600 Genessee, Suite 956
                                    Kansas City, MO  64102
                                    (816) 399-4380
                                    Tony@lacroixlawkc.com

                                    Michael L. Greenwald*
                                    GREENWALD DAVIDSON RADBIL PLLC

7601 N. Federal Highway, Suite A-230
Boca Raton, FL 33487
(561) 826-5477
mgreenwald@gdrlawfirm.com

* To seek admission *pro hac vice*

Counsel for Plaintiff and the proposed classes

12