**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| TIMOTHY MILES, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>MEDICREDIT, INC.,<br><br>Defendant. | Case No.: 4:20-cv-1186-JAR |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

**Table of Contents**


Introduction ........................................................................................................................ 1

Factual Background ............................................................................................................ 2

Argument ............................................................................................................................ 3

I. This Court has jurisdiction over Plaintiff's claims............................................................ 3

A. Justice Kavanaugh's plurality opinion, through which he expressly states that the Supreme Court's decision does not eliminate liability resulting from a violation of the otherwise constitutional robocall restriction, cannot be disregarded as Medicredit suggests it can. .......... 4

B. Because the text of *AAPC* answers the question at issue, the overwhelming weight of authority rejects Medicredit's position. ........................................................................ 6

C. This Court should decline Medicredit's invitation to apply *AAPC* only prospectively... 8

D. Because the government-debt exception, as declared unconstitutional and severed, is a nullity that can neither create new rights nor destroy existing ones, it cannot—despite Medicredit's suggestion otherwise—serve to eliminate liability resulting from a violation of the otherwise constitutional robocall restriction. ................................................................ 9

E. Consistent with severance principles, and in an effort to refrain from invalidating more of the statute than necessary, the Supreme Court did not find the TCPA or the entirety of the robocall restriction unconstitutional. ...................................................................... 10

II. Plaintiff adequately pleads his class claims. .............................................................. 11

A. Medicredit's motion to dismiss Plaintiff's class allegations is premature. .................... 11

B. Class certification under the TCPA is "routine" and certainly not impossible, as Medicredit is well aware. .................................................................................................. 13

C. Medicredit's fact-specific arguments against certification are inappropriate on a motion to dismiss, and should only be considered after discovery. ................................................ 14

D. Plaintiff's proposed classes are ascertainable because they are defined by reference to objective criteria, and Medicredit's arguments regarding the potential difficulty of identifying class members are unfounded. ........................................................................ 16

Conclusion ......................................................................................................................... 18

## Table of Authorities

### Cases

*Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303 (S.D. Cal. 2015) .................................. 14

*Abramson v. Fed. Ins. Co., LLC*, No. 8:19-cv-2523-T-60AAS, 2020 WL 7318953 (M.D. Fla. Dec. 11, 2020) .................................. 7

*Alaska Airlines, Inc. v. Donovan*, 766 F.2d 1550 (D.C. Cir. 1985) .................................. 9

*Am. Ass'n of Political Consultants, Inc. v. Fed. Commc'ns Comm'n*, 923 F.3d 159 (4th Cir. 2019) .................................. 3

*Amoco Oil Co. v. United States*, 234 F.3d 1374 (Fed. Cir. 2000) .................................. 8

*Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 322 F.R.D. 458 (N.D. Ill. 2017) .................................. 14

*Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020) .................................. passim

*Bietsch v. Sergeant's Pet Care Prod., Inc.*, No. 15 C 5432, 2016 WL 1011512 (N.D. Ill. Mar. 15, 2016) .................................. 12

*Blades v. Monsanto Co.*, 400 F.3d 562 (8th Cir. 2005) .................................. 12

*Blow v. Bijora*, 855 F.3d 793 (7th Cir. 2017) .................................. 15

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) .................................. 18

*Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292 (N.D. Ill. 2014) .................................. 13

*Burton v. Fundmerica, Inc.*, No. 8:19-CV-119, 2020 WL 4504303 (D. Neb. Aug. 5, 2020) ........ 8

*Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co.*, 489 F.3d 580 (3d Cir. 2007) .................................. 5

*Cherry v. Dometic Corp.*, 2021 WL 346121 (11th Cir. Feb. 2, 2021) .................................. 18

*Cleary v. Whole Foods Mkt. Rocky Mountain/southwest L.P.*, No. 15-CV-01247-MEH, 2016 WL 7048899 (D. Colo. Dec. 5, 2016) .................................. 12

*Creasy v. Charter Commc'ns, Inc.*, No. 20-1199, 2020 WL 5761117 (E.D. La. Sept. 28, 2020) .................................. 7

*Doohan v. CTB Inv'rs*, LLC, 427 F. Supp. 3d 1034 (W.D. Mo. 2019) .................................. 8

*Drake v. Mirand Response Systems, Inc.*, No. 1:19-cv-01458-RLY-DML, 2020 WL 4218335 (S.D. Ind. July 22, 2020) .................................. 14, 18

*Eberle v. Mich.*, 232 U.S. 700 (1914) ........................................................................ 9, 10

*Fitzhenry v. Career Educ. Corp.*, No. 14-CV-10172, 2016 WL 792312 (N.D. Ill. Mar. 1, 2016) ............................................................................................................................ 13

*Fla. Dep't of Labor & Emp't Sec. v. U.S. Dep't of Labor*, 893 F.2d 1319 (11th Cir. 1990).......... 4

*Frost v. Corp. Comm'n*, 278 U.S. 515 (1929) ........................................................................ 9, 10

*Giesmann, MD, P.C. v. Am. Home Patient, Inc.*, No. 4:14-CV-1538 RLW, 2015 WL 3548803 (E.D. Mo. June 8, 2015)............................................................................................ 12

*Hand v. Beach Entm't KC, LCC*, 425 F. Supp. 3d 1096 (W.D. Mo. 2019).................................. 8

*Harper v. Va. Dep't of Taxation*, 509 U.S. 86 (1993) .................................................................. 8

*Huskey v. Colgate-Palmolive Co.*, 2020 WL 5518312 (E.D. Mo. Sept. 14, 2020) ................. 2, 11

*In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Practices Litig.*, No. 16-02709-MD-W-GAF, 2019 WL 1418292 (W.D. Mo. Mar. 21, 2019)............................................................ 17

*In re Organogenesis Sec. Litig.*, 241 F.R.D. 397 (D. Mass. 2007)............................................. 18

*Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682 (7th Cir. 2013) .................................. 13

*Johnson v. Navient Solutions, Inc.*, 315 F.R.D. 501 (S.D. Ind. 2016) ........................................ 14

*Knapper v. Cox Communications, Inc.*, 329 F.R.D. 238 (D. Ariz. 2019).................................... 13

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019) ............................................... 13

*Lafollette v. Liberty Mut. Fire Ins. Co.*, No. 2:14-CV-04147-NKL, 2016 WL 4083478 (W.D. Mo. Aug. 1, 2016).................................................................................................................. 17

*Lavigne v. First Community Bankshares, Inc.*, No. 1:15-cv-00934-WJ/LF, 2018 WL 2694457 (D.N.M. June 5, 2018) ........................................................................................................ 13

*Lees v. Quest Diagnostics, Inc.*, 3:20-cv-2546, 2021 WL 266548 (N.D. Ohio Jan. 26, 2021) ...... 6

*Lester v. United States*, 921 F.3d 1306 (11th Cir. 2019) .............................................................. 8

*Lindenbaum v. Realgy, LLC*, No. 1:19 CV 2862, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020) ..................................................................................................................... 6, 7

*Marks v. United States*, 430 U.S. 188 (1977) ................................................................................ 5

*Martinez v. Medicredit, Inc.*, No. 4:16-cv-01138-ERW, 2018 WL 2223681 (E.D. Mo. May 15, 2018) ................................................................................................................. 2, 14

*McCall Law Firm, PLLC v. Crystal Queen, Inc.*, 335 F. Supp. 3d 1124 (E.D. Ark. 2018) ......... 12

*McCoy v. Mass. Inst. of Tech.*, 950 F.2d 13 (1st Cir. 1991) ............................................................ 6

*McCurley v. Royal Sea Cruises, Inc.*, No. 17-cv-00986-BAS-AGS, 2021 WL 288164 (S.D. Cal. Jan. 28, 2021)........................................................................................ 1, 5, 6, 7

*McKeage v. TMBC, LLC*, 847 F.3d 992 (8th Cir. 2017)............................................................... 17

*McMillion v. Rash Curtis & Assocs.*, No. 16-CV-03396-YGR, 2017 WL 3895764 (N.D. Cal. Sept. 6, 2017) ........................................................................................................................ 14

*Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015)............................................... 17, 18

*N. L. by Lemos v. Credit One Bank, N.A.*, 960 F.3d 1164 (9th Cir. 2020) .................................. 15

*Nobles v. State Farm Mut. Auto. Ins. Co.*, No. 10-04175-CV-C-NKL, 2012 WL 4090347 (W.D. Mo. Sept. 17, 2012)...................................................................................................... 11

*Perrong v. Liberty Power Corp.*, 411 F. Supp. 3d 258 (D. Del. 2019) ......................................... 8

*Prater v. Medicredit, Inc.*, No. 4:14-cv-00159-ERW, 2015 WL 8331602 (E.D. Mo. Dec. 7, 2015) ................................................................................................................................ 2, 14

*Reyes v. BCA Fin. Servs., Inc.*, No. 16-24077-CIV-Goodman, 2018 WL 3145807 (S.D. Fla. June 26, 2018)......................................................................................................................... 13

*Rieker v. National Car Cure, LLC*, 3:20-cv-5901-TKW-HTC, 2021 WL 210841 (N.D. Fla. Jan. 5, 2021)............................................................................................................................. 7

*Rogers v. Interstate Nat'l Dealer Servs. Inc.*, No. 1:20 CV 00554, 2020 WL 4582689 (N.D. Ohio Aug. 10, 2020) ................................................................................................................. 8

*Rosales v. Heath*, No. 8:17CV87, 2019 WL 7586541 (D. Neb. June 27, 2019) .......................... 15

*Schoenbaum v. E.I. Dupont De Nemours & Co.*, No. 4:05CV01108ERW, 2009 WL 4782082 (E.D. Mo. Dec. 8, 2009)...................................................................................................... 14

*Schwab v. Crosby*, 451 F.3d 1308 (11th Cir. 2006)......................................................................... 6

*Shen v. Tricolor Ca. Auto Grp.*, No. 20-cv-7419 PA (AGRx), 2020 WL 7705888 (C.D. Cal. Dec. 17, 2020)........................................................................................................................... 7

*Smith v. Truman Rd. Dev., LLC*, 414 F. Supp. 3d 1205 (W.D. Mo. 2019).................................... 8

*St. Louis Heart Ctr., Inc. v. Forest Pharm., Inc.*, No. 4:12-CV-02224, 2013 WL 1076540 (E.D. Mo. Mar. 13, 2013) ................................................................................................... 12

*St. Louis Heart Ctr., Inc. v. Nomax, Inc.*, No. 4:15-CV-517 RLW, 2015 WL 9451046 (E.D. Mo. Dec. 23, 2015) .......... 12

*Stoutt v. Travis Credit Union*, No. 2:20-cv-01280 WBS AC, 2021 WL 99636(E.D. Cal. Jan. 12, 2021) .......... 6, 10

*Sutor v. Amerigroup Corp.*, No. 119CV1602LMBJFA, 2020 WL 2124180 (E.D. Va. Mar. 10, 2020) .......... 7

*Taylor v. KC VIN, LLC*, No. 4:19-CV-00110-NKL, 2019 WL 6499140 (W.D. Mo. Dec. 3, 2 019) .......... 8

*Trujillo v. Free Energy Savings Co.*, No. 5:19-cv-02072-MCS-SP, 2020 WL 8184336 (C.D. Cal. Dec. 21, 2020) .......... 7, 9

*United States v. Jackson*, 390 U.S. 570 (1968) .......... 9

*United States v. Miselis*, 972 F.3d 518, 525 (4th Cir. 2020) .......... 9

*Walker v. World Tire Corp., Inc.*, 563 F.2d 918 (8th Cir. 1977) .......... 12

*West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295 (N.D. Cal. 2017) .......... 13

*Wilkes v. CareSource Mgmt. Grp. Co.*, No. 4:16-CV-038 JD, 2016 WL 7179298 (N.D. Ind. Dec. 9, 2016) .......... 16

**Statutes**

47 U.S.C. § 227(b)(1)(A)(iii) .......... 3

## Introduction

In seeking dismissal of Timothy Miles' ("Plaintiff") claims under the Telephone Consumer Protection Act ("TCPA"), Medicredit, Inc. attempts to turn the Supreme Court's ruling in *Barr v. Am. Ass'n of Political Consultants, Inc.* ("*AAPC*"), 140 S. Ct. 2335 (2020), on its head. Far from declaring the entirety of § 227(b)(1)(A)(iii) (the "robocall restriction") unenforceable, the Court in *AAPC* severed an exemption for calls regarding government debts from the statute—an exemption of no relevance to the robocalls Medicredit made to Plaintiff—and left the remaining provisions in place. That is, contrary to Medicredit's suggestion, the Court did not invalidate the entire TCPA or even the robocall restriction, nor did it negate liability for calls like those Medicredit placed. In fact, the Supreme Court expressly stated as much. *Compare id*. at 2355 n.12 ("On the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction."), *with id*. at 2366 (Gorsuch, J. dissenting) (characterizing the plurality opinion as one "that shields *only* government debt collection callers from past liability").[1] And since "[t]his case does not involve the collection of government debt . . . *AAPC* does not negate Defendant's liability and Defendant's motion to dismiss must fail." *McCurley v. Royal Sea Cruises, Inc.*, No. 17-cv-00986-BAS-AGS, 2021 WL 288164, at *2 (S.D. Cal. Jan. 28, 2021).

Medicredit's effort to dismiss Plaintiff's class allegations fares no better. While styled as a motion to dismiss under Rule 12(b)(6), ECF No. 24 at 1, Medicredit does not simply attack the sufficiency of Plaintiff's proposed class definitions, which is the proper standard for evaluating a motion to dismiss. Rather, in an effort to bypass discovery and without the benefit of a full record, Medicredit makes a host of factual assertions—without an opportunity for discovery—and argues that, accepting its assertions as true, this Court should not certify either of Plaintiff's proposed

[1] Internal quotations and citations are omitted unless otherwise indicated.

classes. But such arguments are premature and inappropriate on a motion to dismiss a complaint's allegations. They are also at odds with two decisions from this District—albeit in the settlement context—certifying analogous TCPA class actions against Medicredit. Indeed, it strains credulity to insist at the pleadings stage that Plaintiff cannot certify his proposed classes when two courts in this District have done just that.

At bottom, and as contemplated under Rule 23, this Court should allow Plaintiff a reasonable opportunity to conduct class discovery before addressing whether he ultimately will satisfy the elements of Rule 23. *See Huskey v. Colgate-Palmolive Co.*, --- F. Supp. 3d ----, 2020 WL 5518312, at *8 (E.D. Mo. Sept. 14, 2020) (Ross, J.) (noting the "severity" of dismissing class allegations at the pleading stage, and finding "that the decision as to the survival of Plaintiffs' class allegations should be made after allowing Plaintiffs to conduct discovery or on motion to the Court wherein they can provide additional briefing to explain whether the prerequisites of Rule 23 can be satisfied.").

**Factual Background**

Medicredit violated the TCPA by placing numerous telephone calls to Plaintiff's cellular telephone number, by using an automatic telephone dialing system ("ATDS") and a prerecorded or artificial voice, regarding an account that did not belong to him, and without his prior express consent. *See generally* ECF No. 18.

These illegal robocalls are in line with Medicredit's long-standing pattern of TCPA noncompliance. To that end, the company previously settled two class actions in connection with which the plaintiffs asserted claims nearly identical to those Plaintiff now asserts. *See Martinez v. Medicredit, Inc.*, No. 4:16-cv-01138-ERW, 2018 WL 2223681 (E.D. Mo. May 15, 2018) (Webber, J.); *Prater v. Medicredit, Inc.*, No. 4:14-cv-00159-ERW, 2015 WL 8331602 (E.D. Mo. Dec. 7, 2015) (Webber, J.). Here, Plaintiff seeks to certify two classes of similarly situated persons who received

ATDS or prerecorded voice calls from Medicredit on their cellular telephones, but who did not have a Medicredit account. ECF No. 18, at ¶ 53.

## Argument

### I. This Court has jurisdiction over Plaintiff's claims.

In 1991 Congress enacted the TCPA, which read, in relevant part: "It shall be unlawful for any person . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

"Twenty-four years later, in 2015, Congress passed and President Obama signed the Bipartisan Budget Act . . . [which] amended the TCPA's restriction on robocalls to cell phones." *AAPC*, 140 S. Ct. at 2344-45. Specifically, the 2015 amendment inserted the following language at the end of the robocall restriction: "unless such call is made solely to collect a debt owed to or guaranteed by the United States[.]" *Id.* "In other words, Congress carved out a new government-debt exception to the general robocall restriction." *Id.*

The plaintiffs in *AAPC* "filed a declaratory judgment action . . . claiming that § 227(b)(1)(A)(iii) violated the First Amendment." *Id*. at 2345. Following litigation in the district court, the Fourth Circuit held that the government-backed debt exemption was unconstitutional, should be severed, and that the underlying TCPA remained enforceable: "severance of the debt-collection exemption will not undermine the automated call ban." *Am. Ass'n of Political Consultants, Inc. v. Fed. Commc'ns Comm'n*, 923 F.3d 159, 171 (4th Cir. 2019).

The government then "petitioned for a writ of certiorari because the Court of Appeals invalidated part of a federal statute—namely, the government-debt exception. Plaintiffs supported the petition, arguing from the other direction that the Court of Appeals did not go far enough in

providing relief and should have invalidated the entire 1991 robocall restriction rather than simply invalidating the 2015 government-debt exception." *AAPC*, 140 S. Ct. at 2345-46.

Ultimately, six Justices in *AAPC* concluded that Congress "impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment." *Id.* at 2343-44. Seven Justices, "[a]pplying traditional severability principles," concluded "that the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government-debt exception must be invalidated and severed from the remainder of the statute." *Id*.

**A. Justice Kavanaugh's plurality opinion, through which he expressly states that the Supreme Court's decision does not eliminate liability resulting from a violation of the otherwise constitutional robocall restriction, cannot be disregarded as Medicredit suggests it can.**

Through the plurality opinion in *AAPC*—which Justices Roberts and Alito joined—Justice Kavanaugh rejected the very argument on which Medicredit bases its request for relief. *See AAPC*, 140 S. Ct. at 2355 n.12 ("On the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction.").

Conceding this, Medicredit first dismisses Justice Kavanaugh's statement as *dicta* unnecessary to the Supreme Court's decision. *See* ECF No. 24 at 6-7. But Justice Kavanaugh's statement cannot be so easily discharged, as it serves to both define the scope of the decision and clarify the actual effect of the Supreme Court's severability-related holding. And that Justice Kavanaugh presented his statement by way of a footnote does not alone change this. *Accord Fla. Dep't of Labor & Emp't Sec. v. U.S. Dep't of Labor*, 893 F.2d 1319, 1323 n.7 (11th Cir. 1990) ("it is not possible to characterize this footnote in [the Supreme Court's decision] as *obiter dictum*").

As well, Medicredit seeks to undermine footnote 12 because it "was joined by only two other justices." ECF No. 24 at 7 n.4. But Medicredit's contention does not support its conclusion. Simply, through the dissenting opinion—which Justice Thomas joined—Justice Gorsuch referred to Justice

Kavanaugh's opinion as one that "shields *only* government-debt collection callers from past liability under an admittedly unconstitutional law[.]" *Id*. at 2366. This means that Justice Kavanaugh, who authored the plurality opinion in *AAPC* on behalf of three Justices, and Justice Gorsuch, who authored the sole dissenting opinion on behalf of two Justices, both openly recognized that the remedy the Supreme Court fashioned in *AAPC* allows for the prosecution of violations of the robocall restriction during the time after which the government-debt exception was enacted but before the Supreme Court severed it. *See id*. at 2355 n.12; *id*. at 2366.

And for purposes of the instant dispute, an additional three Justices can be reasonably grouped with these five. Because while Justices Breyer, Ginsburg, and Kagan wrote that they would have upheld the government-debt exception's constitutionality and left the robocall prohibition intact, they nonetheless agreed, given the contrary majority view, that the government-debt exception was severable from the rest of the robocall restriction. *See AAPC*, 140 S. Ct. at 2357 (Breyer, J., concurring in the judgment with respect to severability and dissenting in part). And as often recognized, "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977). The narrowest ground—or in other words the "common denominator" among the plurality and concurring opinions in *AAPC*, *see Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co.*, 489 F.3d 580, 586 n.2 (3d Cir. 2007)—is that the robocall provision remained unaffected by the government-debt exception.

Noteworthy, the court in *McCurley* similarly reasoned that footnote 12 is not *dicta*. 2021 WL 288164, at *2 ("Defendant instead argues that Justice Kavanaugh's opinion is mere *dicta* and should be ignored by this Court. The Court disagrees. *** Therefore, the Court finds Justice Kavanaugh's statement is not dicta and must be followed by this Court.").

Lastly, even if footnote 12 is dicta, it should control in a circumstance such as that presented by Medicredit's motion to dismiss. *See Schwab v. Crosby*, 451 F.3d 1308, 1325 (11th Cir. 2006) ("It would never occur to us to tell the Supreme Court that we would decide our cases based on our analysis of its decisions, not its own analysis of them, just because that analysis had been announced in a case where it was not essential to the result."); *accord McCoy v. Mass. Inst. of Tech.*, 950 F.2d 13, 19 (1st Cir. 1991) ("[F]ederal appellate courts are bound by the Supreme Court's considered *dicta* almost as firmly as by the Court's outright holdings, particularly when, as here, a *dictum* is of recent vintage and not enfeebled by any subsequent statement.").

And the court in *McCurley* specifically stated just that. *See* 2021 WL 288164, at *3 ("Even if it was only *dicta*, as argued by Defendant, the district court is not at liberty to completely ignore this pronouncement.") (citing *United States v. Montero-Camargo*, 208 F.3d 1122, 1133 n.17 (9th Cir. 2000)).

**B. Because the text of *AAPC* answers the question at issue, the overwhelming weight of authority rejects Medicredit's position.**

Given the plurality opinion's express pronouncement, it is unsurprising that the majority of courts—including at least seven consecutive district court decisions addressing the exact question at issue here—reject Medicredit's position. *See, e.g.*, *McCurley*, 2021 WL 288164, at *4 ("*AAPC* makes it clear that the TCPA still applies to this conduct even though it occurred between 2015 and 2020."); *Lees v. Quest Diagnostics, Inc.*, 3:20-cv-2546, 2021 WL 266548, at *1 (N.D. Ohio Jan. 26, 2021) ("this Court finds there is no constitutional defect to the Plaintiff's claim under 47 U.S.C. § 227(b)(1)(A)(iii) for conduct taking place in the 2015–2020 period.");[2] *Stoutt v. Travis Credit Union*, No. 2:20-cv-01280 WBS AC, 2021 WL 99636, at *5 (E.D. Cal. Jan. 12, 2021) ("Because

[2] Despite being in the same jurisdiction, *Lees* rejected *Lindenbaum v. Realgy, LLC*, No. 1:19 CV 2862, 2020 WL 6361915, at *1 (N.D. Ohio Oct. 29, 2020).

the Supreme Court has invalidated and severed the government-debt exception from the remainder of § 227(b)(1)(A)(iii), the exception did not affect the remainder of the statute and the statute remains enforceable, at least against non-government debt collectors, as to calls made between November 2015 and July 6, 2020."); *Rieker v. National Car Cure, LLC*, 3:20-cv-5901-TKW-HTC, 2021 WL 210841, at *1 (N.D. Fla. Jan. 5, 2021) ("the robocall statute remains enforceable, at least against non-government-debt collectors, as to calls made between 2015 and [July] 2020."); *Trujillo v. Free Energy Savings Co.*, No. 5:19-cv-02072-MCS-SP, 2020 WL 8184336, at *5 (C.D. Cal. Dec. 21, 2020) ("the robocall statute remains enforceable, at least against non-government-debt collectors, as to calls made between 2015 and 2020. Thus, the Court can adjudicate Plaintiff's individual claim concerning Defendant's non-government-debt collection messages sent in 2019."); *Shen v. Tricolor Ca. Auto Grp.*, No. 20-cv-7419 PA (AGRx), 2020 WL 7705888, at *5 (C.D. Cal. Dec. 17, 2020) ("the Court concludes that Plaintiff's 1st AC, which is based on the parts of the TCPA that were enacted in 1991 and have survived a constitutional challenge, states a viable claim over which the Court possesses subject matter jurisdiction."); *Abramson v. Fed. Ins. Co., LLC*, No. 8:19-cv-2523-T-60AAS, 2020 WL 7318953, at *2 (M.D. Fla. Dec. 11, 2020) ("parties may continue to bring claims under the portions of § 227(b) unaltered by *AAPC*.").[3]

This Court should do the same.[4]

---

[3] These decisions convincingly refute *Lindenbaum* and *Creasy v. Charter Commc'ns, Inc.*, No. 20-1199, 2020 WL 5761117 (E.D. La. Sept. 28, 2020), the two cases on which Medicredit principally relies. *See, e.g.*, *McCurley*, 2021 WL 288164, at *3 ("Both cases ignore the pronouncements in the plurality decision as articulated by Justice Kavanaugh and joined by six other justices and adopt the position of the two-justice dissent. . . . Whatever this Court may think of the Supreme Court's logic or conclusions, it does not dismiss such conclusions so lightly. Even if it was only dicta, as argued by Defendant, the district court is not at liberty to completely ignore this pronouncement.").

[4] *See also Sutor v. Amerigroup Corp.*, No. 119CV1602LMBJFA, 2020 WL 2124180, at *1 (E.D. Va. Mar. 10, 2020) ("the only reason *Barr* would have any bearing on this case is if the Supreme Court both finds the government-debt exception unconstitutional, and decides, contrary to

### C. This Court should decline Medicredit's invitation to apply *AAPC* only prospectively.

A "controlling interpretation of federal law . . . must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the [interpretation]." *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993). This "prohibit[s] the erection of selective temporal barriers to the application of federal law in noncriminal cases." *Id*. It also prevents "the substantive law [from] shift[ing] and spring[ing] according to the particular equities of [individual parties'] claims of actual reliance on an old rule and of harm from a retroactive application of the new rule." *Id*. At bottom, the Supreme Court lacks any constitutional authority "to disregard current law or to treat similarly situated litigants differently." *Id*.

In *AAPC*, the Supreme Court "sever[ed] the 2015 government-debt exception and le[ft] in place the longstanding robocall restriction." 140 S. Ct. at 2355. The Court's decision constitutes a judicial interpretation of federal law. *See Amoco Oil Co. v. United States*, 234 F.3d 1374, 1377 (Fed. Cir. 2000) ("[T]he issue of severability is a matter of statutory interpretation."); *Lester v. United States*, 921 F.3d 1306, 1314 (11th Cir. 2019) ("As the Supreme Court and commentators have long acknowledged, severability is fundamentally an exercise in statutory interpretation."); *Alaska*

the holdings of the two courts of appeals to consider this issue, that the appropriate remedy is the extreme measure of striking down the entire statute."); *Rogers v. Interstate Nat'l Dealer Servs. Inc.*, No. 1:20 CV 00554, 2020 WL 4582689, at *1 (N.D. Ohio Aug. 10, 2020); *Smith v. Truman Rd. Dev., LLC*, 414 F. Supp. 3d 1205, 1231 (W.D. Mo. 2019); *Perrong v. Liberty Power Corp.*, 411 F. Supp. 3d 258, 269 (D. Del. 2019); *Hand v. Beach Entm't KC, LCC*, 425 F. Supp. 3d 1096, 1122 (W.D. Mo. 2019); *Doohan v. CTB Inv'rs, LLC*, 427 F. Supp. 3d 1034, 1060 (W.D. Mo. 2019); *Taylor v. KC VIN, LLC*, No. 4:19-CV-00110-NKL, 2019 WL 6499140, at *16 (W.D. Mo. Dec. 3, 2019); *accord Burton v. Fundmerica, Inc.*, No. 8:19-CV-119, 2020 WL 4504303, at *1 n.2 (D. Neb. Aug. 5, 2020) (granting a default judgment and explaining that "[t]he Supreme Court held last month in *Barr* that one of the exceptions to this general prohibition, for calls made solely to collect a government debt, violated the First Amendment, but that it was severable from the TCPA as a whole—so, the provision on which the plaintiff's claim relies survived.").

*Airlines, Inc. v. Donovan*, 766 F.2d 1550, 1555 (D.C. Cir. 1985), *aff'd sub nom. Alaska Airlines, Inc. v. Brock*, 480 U.S. 678 (1987) (noting that a question regarding severability "reduces to a matter of statutory interpretation"). It therefore must be given retroactive effect.

Consequently, Medicredit's contention that the Court made the TCPA constitutional only prospectively, ECF No. 24 at 1, 5, 7, is without merit.

**D. Because the government-debt exception, as declared unconstitutional and severed, is a nullity that can neither create new rights nor destroy existing ones, it cannot—despite Medicredit's suggestion otherwise—serve to eliminate liability resulting from a violation of the otherwise constitutional robocall restriction.**

"Echoing *Marbury*, the Court in *Frost* explained that an unconstitutional statutory amendment 'is a nullity' and 'void' when enacted, and for that reason has no effect on the original statute." *AAPC*, 140 S. Ct. at 2353. In other words, an amendment to a federal statute that is "void for unconstitutionality" cannot be given any effect "because an existing statute cannot be recalled or restricted by anything short of a constitutional enactment." *Frost v. Corp. Comm'n*, 278 U.S. 515, 526 (1929).[5] As such, the government-debt exception, as declared unconstitutional, cannot eliminate Medicredit's liability for non-government-debt calls made in violation of the robocall restriction. *Accord Eberle v. Mich.*, 232 U.S. 700, 702-04 (1914) (finding that defendants could not escape liability for selling alcohol in violation of a law then-subject to unconstitutional exceptions).

Post-*Frost* decisions reinforced this point. *See, e.g.*, *United States v. Jackson*, 390 U.S. 570, 571 (1968) (holding that defendants remained liable for violations of the Kidnapping Act despite the then-existing unconstitutional amendment to the law); *United States v. Miselis*, 972 F.3d 518, 525, 543 (4th Cir. 2020) (finding that the Riot Act was overbroad, but holding that "the overbroad portions of the statute are severable from the constitutionally valid remainder," and explaining that

[5] Medicredit's efforts to distinguish *Frost* are unavailing. ECF No. 24 at 7. *See Trujillo*, 2020 WL 8184336, at *4 ("The *Frost* framework is applicable here.").

the "the last phrase of [the Riot Act provision in question] is easily dropped off from the rest of the clause in which it appears, much like the government-debt exception severed in *Barr*.").

In the end, Medicredit's position that it cannot be liable for non-government-debt calls made in violation of the robocall restriction during the period of time in which the government-debt exception existed cannot be reconciled with the Supreme Court's opinions in *Eberle*, *Frost* and *Jackson*, and the Fourth Circuit's opinion in *Miselis*.

**E. Consistent with severance principles, and in an effort to refrain from invalidating more of the statute than necessary, the Supreme Court did not find the TCPA or the entirety of the robocall restriction unconstitutional.**

Finally, it bears mention that the foundation on which Medicredit's motion to dismiss rests—that the Supreme Court in *AAPC* declared the entirety of the TCPA's robocall restriction unconstitutional, and then cured the constitutional defect by severing the government-debt exception, *see* ECF No. 24 at 5 ("The Court lacks subject matter jurisdiction over this matter because at the time of Medicredit's alleged calls to Plaintiff in 2018, the TCPA was unconstitutional.")—is flawed. *See Stoutt*, 2021 WL 99636, at *4 ("Holding the entire robocall ban to be ineffective as to calls made between 2015 and 2020 would improperly construe *AAPC* as having invalidated the entirety of § 227(b)(1)(A)(iii), rather than just the government-debt exception, and thus would undermine the Court's central purpose in severing the statute.").

Instead, the Supreme Court "conclude[d] that the 2015 government-debt exception created an unconstitutional exception to the 1991 robocall restriction." *AAPC*, 140 S. Ct. at 2348; *see also id*. at 2356 ("We hold that the 2015 government-debt exception added an unconstitutional *exception* to the law."); *id*. at 2357 ("A majority of the Court holds *the exception* violates the First Amendment.") (Breyer, J., concurring in the judgment); *id*. at 2358 ("The plurality finds the *government-debt exception* unconstitutional primarily by applying a logical syllogism[.]").

To be sure, Justice Kavanagh explained that "seven Members of the Court conclude that the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government-debt exception must be invalidated and severed from the remainder of the statute." *Id.* at 2343. Justice Kavanaugh took care to again make the same point later: "Having concluded that the 2015 government-debt exception created an unconstitutional exception to the 1991 robocall restriction, we must decide whether to invalidate the entire 1991 robocall restriction, or instead to invalidate and sever the 2015 government-debt exception. *** . . . In short, the correct result in this case is to sever the 2015 government-debt exception and leave in place the longstanding robocall restriction." *Id.* at 2356.

Accordingly, Medicredit's contention that the Supreme Court declared the entirety of the TCPA's robocall restriction unconstitutional, and then cured the defect by way of severing the government-debt exception, not only conflicts with the language of the decision itself, but also turns on its head the very severability analysis the Court employed so as to avoid invalidating the robocall restriction, or the TCPA, in its entirety. Medicredit's argument, that is, has it completely backwards. In reality, the Supreme Court in *AAPC* heeded "[t]he Court's precedents [that] reflect a decisive preference for surgical severance rather than wholesale destruction, even in the absence of a severability clause," and severed the government-debt exception as part of a concerted effort not to hold the entirety of the robocall restriction unconstitutional. *Id*. at 2051.

## II. Plaintiff adequately pleads his class claims.

### A. Medicredit's motion to dismiss Plaintiff's class allegations is premature.

Motions to dismiss or strike class allegations are strongly disfavored. *See Huskey*, 2020 WL 5518312, at *8; *Nobles v. State Farm Mut. Auto. Ins. Co.*, No. 10-04175-CV-C-NKL, 2012 WL 4090347, at *2 n.1 (W.D. Mo. Sept. 17, 2012) (noting that "the weight of authority indicates that courts should meet motions to dismiss class allegations at the 12(b)(6) stage with a great deal of

skepticism."); *accord Walker v. World Tire Corp., Inc.*, 563 F.2d 918, 921 (8th Cir. 1977) ("The propriety of class action status can seldom be determined on the basis of the pleadings alone.").

To that end, in the context of a motion to dismiss class allegations, the "defendant must demonstrate from the face of the plaintiffs' complaint that it will be *impossible* to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove." *Cleary v. Whole Foods Mkt. Rocky Mountain/southwest L.P.*, No. 15-CV-01247-MEH, 2016 WL 7048899, at *2 (D. Colo. Dec. 5, 2016).

Against this backdrop, in deciding whether class claims succeed or fail, "[t]he Court must have before it sufficient material to determine the nature of the allegations, and rule on compliance with the Rule's requirements. Where . . . the pleadings themselves do not conclusively show whether the Rule 23 requirements are met, the parties must be afforded the opportunity to discover and present documentary evidence on the issue." *St. Louis Heart Ctr., Inc. v. Forest Pharm., Inc.*, No. 4:12-CV-02224, 2013 WL 1076540, at *5 (E.D. Mo. Mar. 13, 2013) (Hamilton, J.) (denying motion to dismiss TCPA class allegations);[6] *see also McCall Law Firm, PLLC v. Crystal Queen, Inc.*, 335 F. Supp. 3d 1124 (E.D. Ark. 2018) (denying as premature motion to strike TCPA class allegations); *St. Louis Heart Ctr., Inc. v. Nomax, Inc.*, No. 4:15-CV-517 RLW, 2015 WL 9451046, at *2 (E.D. Mo. Dec. 23, 2015) (White, J.) (denying motion to strike TCPA class allegations); *Giesmann, MD, P.C. v. Am. Home Patient, Inc.*, No. 4:14-CV-1538 RLW, 2015 WL 3548803, at *5 (E.D. Mo. June 8, 2015) (White, J.) (same).[7]

---

[6] For this reason, the majority of the decisions Medicredit cites are inapposite because they addressed motions for class certification after an opportunity for discovery and on a developed record. *See, e.g., Blades v. Monsanto Co.*, 400 F.3d 562, 568 (8th Cir. 2005) ("The record is extensive."). The issue here is not whether this Court ultimately will certify a class, but whether it will be impossible for Plaintiff to certify a class no matter what discovery reveals.

[7] *See also Bietsch v. Sergeant's Pet Care Prod., Inc.*, No. 15 C 5432, 2016 WL 1011512, at *9 n.11 (N.D. Ill. Mar. 15, 2016) ("Although Sergeant's has filed a motion to strike class allegations,

**B. Class certification under the TCPA is "routine" and certainly not impossible, as Medicredit is well aware.**

While Medicredit insists that Plaintiff's proposed class definitions cannot satisfy Rule 23, ECF No. 24 at 2, certification of TCPA class actions is relatively commonplace, as the elements needed to prove a violation of the TCPA and its damages scheme lend themselves naturally to class-wide proof. As Judge Easterbrook wrote: "Class certification is normal in litigation under [the TCPA], because the main questions . . . are common to all recipients." *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013); *accord Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 656 (4th Cir. 2019) ("Given the remedial purpose of the TCPA, it is no surprise that its cause of action would be conducive to class-wide disposition.").

And this is especially true in non-debtor and wrong-number cases, like this matter, where courts do not have to inquire as to whether each putative class member may be subject to an independent consent defense. *See, e.g., Knapper v. Cox Communications, Inc.*, 329 F.R.D. 238 (D. Ariz. 2019) (certifying a "wrong number" TCPA class nearly identical to those proposed here); *Reyes v. BCA Fin. Servs., Inc.*, No. 16-24077-CIV-Goodman, 2018 WL 3145807 (S.D. Fla. June 26, 2018) (certifying an unintended recipient TCPA class); *Lavigne v. First Community Bankshares, Inc.*, No. 1:15-cv-00934-WJ/LF, 2018 WL 2694457 (D.N.M. June 5, 2018) (certifying wrong number TCPA class); *West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295 (N.D. Cal. 2017) (same);

---

as discussed below, that motion is also premature, as Plaintiffs have not had the opportunity to pursue class discovery and it is not apparent from the pleadings that the class allegations are deficient."); *Fitzhenry v. Career Educ. Corp.*, No. 14-CV-10172, 2016 WL 792312, at *5 (N.D. Ill. Mar. 1, 2016) (denying motion to strike TCPA class claims because all arguments advanced are "speculative" and "premature"); *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 299 (N.D. Ill. 2014) ("the Court rejects Optimum's predominance and commonality arguments as premature. The Court makes no determinations regarding whether proposed class members' claims are, in fact, susceptible to generalized proof; it holds only that Buonomo must have the opportunity to conduct discovery regarding what evidence that exists before the Court can determine whether certification of a 'wrong party' class is appropriate in this case.").

*Johnson v. Navient Solutions, Inc.*, 315 F.R.D. 501 (S.D. Ind. 2016) (same); *Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303, 306 (S.D. Cal. 2015) (same); *accord Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 322 F.R.D. 458, 462 (N.D. Ill. 2017) (certifying a fax-based TCPA class, noting that "Class certification is 'normal' under the TCPA."); *McMillion v. Rash Curtis & Assocs.*, No. 16-CV-03396-YGR, 2017 WL 3895764 (N.D. Cal. Sept. 6, 2017) (certifying over objection two "non-debtor" TCPA classes).

To be sure, Judge Webber certified two class actions against Medicredit over its illegal robocalling practices. *See Martinez*, 2018 WL 2223681, at *3 ("The Court finds for settlement purposes that the Action satisfies all the requirements of Rule 23 of the Federal Rules of Civil Procedure."); *Prater*, 2015 WL 8331602, at *2 (settlement class satisfies Rule 23(a) and (b)).[8]

So, considering that courts routinely certify TCPA class actions like this matter, Medicredit's suggestion that it is impossible for Plaintiff to certify his proposed TCPA classes is not credible. Accordingly, this Court should deny Medicredit's motion. *See Drake v. Mirand Response Systems, Inc.*, No. 1:19-cv-01458-RLY-DML, 2020 WL 4218335 (S.D. Ind. July 22, 2020) (denying motion to strike materially similar class allegations in a proposed wrong number TCPA class action).

**C. Medicredit's fact-specific arguments against certification are inappropriate on a motion to dismiss, and should only be considered after discovery.**

Medicredit does not simply attack Plaintiff's allegations "on their face." ECF No. 24 at 18. Rather, it uses its motion to dismiss to present numerous factual assertions that lack evidentiary

---

[8] While Medicredit agreed to certification of the wrong number classes at issue in *Martinez* and *Prater* for settlement purposes only, "Rule 23's standards for class certification—apart from consideration of whether the case would be manageable to try as a class action—are equally applicable and rigorous in the settlement context." *Schoenbaum v. E.I. Dupont De Nemours & Co.*, No. 4:05CV01108ERW, 2009 WL 4782082, at *3 (E.D. Mo. Dec. 8, 2009) (Webber, J.). And while Medicredit certainly is free to challenge certification here, its previous acquiescence to certification of wrong number TCPA class actions against it—and court approval of the same—severely undercuts its position that Plaintiff's proposed classes cannot be certified under any circumstances.

support, and which are not found within the four corners of Plaintiff's amended complaint. These unsupported claims include, among others:

- "Call recordings do not reliably identify 'called parties' because call recipients often do not answer the phone; answer but do not identify themselves; or deny that they are a debtor (to avoid speaking with a collector)." ECF No. 24 at 2;

- "an individual may be identified differently in different records, *e.g.*, due to changes in last names as a result of marriage or divorce; the use of nicknames; or the use by multiple individuals of cellular phone 'family plans' in which multiple lines are registered only in the name of the subscriber." *Id.* at 3;

- Medicredit may obtain consent to call when "a third party may fill out an admissions form on the patient's behalf, *e.g.*, where the patient is elderly or incapacitated, and list her own telephone number." *Id.*;[9]

- "prior express consent may also be provided to call someone other than the patient with the Medicredit account." *Id.*;

- "Self-identification is not feasible or reliable because many call recipients do not answer the phone for a variety of reasons, including that they do not want to talk to a collector; their phone is off or out of service area; or they are involved in another call. Others may answer but not identify themselves. Still others may seek to avoid discussion with a debt collector by asserting — incorrectly — that they are not the person the agent is seeking to reach." *Id.* at 10;

- "There is similarly no source of external evidence that can be used to identify 'called parties.'" *Id.* at 11;

- "In some cases, there may be an error in identifying the called party. Alternatively, an account holder could be identified differently in different records due to the use of nicknames, changes in last name (due to marriage or divorce) or changes in address. Further discrepancies could arise in the common circumstance of a 'family plan,' where a subscriber

---

[9] All of Medicredit's consent-based arguments against certification are premature and unfounded at this stage. This is because prior express consent "is an affirmative defense for which [the defendant] bears the burden of proof." *Rosales v. Heath*, No. 8:17CV87, 2019 WL 7586541, at *2 (D. Neb. June 27, 2019); *accord Blow v. Bijora*, 855 F.3d 793, 803 (7th Cir. 2017) ("Express consent is an affirmative defense on which the defendant bears the burden of proof."). Not only has Medicredit not asserted an affirmative defense of prior express consent (nor has it answered the amended complaint), but at the pleadings stage there is no evidence that Medicredit obtains consent from anyone to place robocalls. Moreover, this case involves calls to persons who do not have accounts with Medicredit, and Medicredit offers no evidence that it has consent to call such persons. *See N. L. by Lemos v. Credit One Bank, N.A.*, 960 F.3d 1164, 1166 (9th Cir. 2020) ("Credit One's intent to call a customer who had consented to its calls does not exempt Credit One from liability under the TCPA when it calls someone else who did not consent.").

registers multiple telephone numbers in her name, but the customary user—whose name does not appear on the records—is the individual with the Medicredit account." *Id.* at 12;

- "Debt collectors such as Medicredit typically call consumers who provided prior express consent and there are many circumstances (discussed below) in which a consenting call recipient is someone other than the account holder." *Id.* at 13; and

- "there are many reasons a voicemail will not play, *e.g.*, the recipient uses call-blocking technology (the situation in *Roberts*); never set up her voicemail box; deactivated her voicemail box; her voicemail box was full; or the voicemail program did not operate." *Id.* at 15-16.

Notwithstanding, Medicredit insists that this Court should dispose of Plaintiff's class claims without an opportunity for Plaintiff to test Medicredit's assertions through discovery (and without Medicredit having to prove them).[10] But because discovery is necessary before a fact-sensitive challenge to class certification is appropriate, this Court should deny Medicredit's motion. *See Wilkes v. CareSource Mgmt. Grp. Co.*, No. 4:16-CV-038 JD, 2016 WL 7179298, at *7-8 (N.D. Ind. Dec. 9, 2016) ("The role that evidence set forth by a defendant plays in resolving the predominance inquiry presents an obstacle to CareSource's request to resolve this issue based on the Plaintiff's complaint, and ultimately dooms its request to strike the class allegations at this stage.").

**D. Plaintiff's proposed classes are ascertainable because they are defined by reference to objective criteria, and Medicredit's arguments regarding the potential difficulty of identifying class members are unfounded.**

In seeking to dismiss Plaintiff's class allegations, Medicredit asserts that the class definitions do not satisfy the Rule 23 ascertainability requirement. ECF No. 24 at 9, 16. But in doing so, Medicredit conflates an ascertainable class—one defined by reference to objective criteria—with the ability to identify all class members, at the class certification stage. Alternatively, Medicredit frames the argument as one of Rule 23(b)(3) predominance, in that it contends that fact-specific inquires will be necessary to determine class membership. *See* ECF No. 24 at 8 (positing that

[10] Underscoring the premature nature of Medicredit's motion are its references to expert testimony in other TCPA cases—testimony developed during discovery. *See* ECF No. 24 at 11.

Plaintiff's proposed classes do not satisfy Rule 23(b)(3) "because they require highly individualized inquiries to determine class membership"). In either event, the question of Rule 23(b)(3) predominance is whether the "questions of law or fact common to class members predominate over any questions affecting only individual members," *see* Fed. R. Civ. P. 23(b)(3), not whether individual questions are necessary to determine whether a person meets the class definition.[11]

To be clear, Plaintiff need not identify individual class members at the certification stage (and certainly not at the pleadings stage). Rather, the focus of the ascertainability inquiry is on "the adequacy of the class definition itself," not "on whether, given an adequate class definition, it would be difficult to identify particular members of the class." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015); *accord In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Practices Litig.*, No. 16-02709-MD-W-GAF, 2019 WL 1418292, at *12 (W.D. Mo. Mar. 21, 2019) ("A separate threshold ascertanability requirement is not the law in this circuit."); *Lafollette v. Liberty Mut. Fire Ins. Co.*, No. 2:14-CV-04147-NKL, 2016 WL 4083478, at *5 (W.D. Mo. Aug. 1, 2016) (explaining that the Eighth Circuit in *Sandusky* "did not apply any heightened ascertainability standard as advocated by the defendant there[,] [n]or did it examine, or even mention, administrative feasibility in connection with ascertainability").

As such, an ascertainable class is simply one where the class definition is based on objective criteria, as opposed to, for example, a class member's state of mind. *Mullins*, 795 F.3d at 659; *see also McKeage v. TMBC, LLC*, 847 F.3d 992, 998 (8th Cir. 2017) ("[a] class may be ascertainable when its members may be identified by reference to objective criteria.").

---

[11] Of course, individual inquires are always necessary to determine whether a person fits within a class definition. For example, a class defined to only include women, purchasers of a particular product, or those who smoke cigarettes will require individual inquires to determine class membership. But that does not defeat certification. If it did, any class with membership criteria—which all must have—would fail Medicredit's proffered standard.

More particularly, a class is ascertainable where it is (1) not amorphous or imprecise, but clearly defined, (2) not limited by subjective criteria, but rather objective criteria, and (3) not a fail-safe class, or one defined in terms of success on the merits. *See Mullins*, 795 F.3d at 659-60.

Here, the proposed class definitions are not vague. *See* ECF No. 18, at ¶ 53. They identify particular groups of individuals harmed in particular ways during a specific period of time. *Id*. The definitions are not limited by subjective criteria. *Id*. Accordingly, Plaintiff's proposed classes are ascertainable, and Medicredit's concerns[12] about its supposed inability to identify particular persons who fall within the definitions falls flat. *See Drake*, 2020 WL 4218335, at *3.

And while identifying class members is not nearly as difficult as Medicredit suggests,[13] there is no requirement that doing so be easy or straightforward. *See Cherry v. Dometic Corp.*, --- F.3d ----, 2021 WL 346121, at *4 (11th Cir. Feb. 2, 2021) ("A class is 'clearly ascertainable' if we are certain that its membership is 'capable of being' determined. But membership can be capable of determination without being capable of *convenient* determination."); *see also Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1132 (9th Cir. 2017) ("there is no due process right to a *cost-effective* procedure for challenging every individual claim to class membership.").

**Conclusion**

This Court should deny Medicredit's motion to dismiss in its entirety.

---

[12] "[P]laying the role of the proverbial fox guarding the henhouse," *In re Organogenesis Sec. Litig*., 241 F.R.D. 397, 410-11 (D. Mass. 2007), Medicredit feigns concern that Plaintiff will not be able to identify every person who has a TCPA claim against it. ECF No. 24 at 10-12. And notwithstanding the fault in Medicredit's premise, its proposed remedy is to deny class certification outright at the pleadings stage, which will virtually ensure that class members will not recover for Medicredit's large-scale violations of the TCPA.

[13] Determining whether a person received a prerecorded voice message is hardly a Herculean undertaking. *See* ECF No. 24 at 15-17. Class members may have retained the message(s) like Plaintiff did, can attest to having received a message, and can consult their phone records (and, potentially, Medicredit's records). At bottom, such a determination is not an insurmountable hurdle.

Dated: February 4, 2021

*/s/ Michael L. Greenwald*
Michael L. Greenwald (*pro hac vice*)
GREENWALD DAVIDSON RADBIL PLLC
7601 N. Federal Highway, Suite A-230
Boca Raton, FL 33487
(561) 826-5477
mgreenwald@gdrlawfirm.com

Anthony LaCroix
LaCROIX LAW FIRM, LLC
1600 Genessee, Suite 956
Kansas City, MO 64102
(816) 399-4380
Tony@lacroixlawkc.com

Counsel for Plaintiff and the proposed classes

**CERTIFICATE OF SERVICE**

I certify that on February 4, 2021, the foregoing document was filed with the Court using CM/ECF, which will send notification of such to all counsel of record.

*/s/ Michael L. Greenwald*
Michael L. Greenwald