# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

|  |  |
|---|---|
| TIMOTHY MILES, on behalf of himself and others similarly situated, | Case No.: 4:20-cv-1186-JAR |
| Plaintiff, |  |
| vs. |  |
| MEDICREDIT, INC., |  |
| Defendant. |  |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## Introduction

Following nearly two years of vigorously contested litigation, and as a result of arm's-length negotiations before the Hon. Diane M. Welsh (Ret.), acting as a mediator, the parties agreed to resolve this matter under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. In short, Medicredit, Inc. ("Defendant") will create a non-reversionary, all-cash common fund in the amount of $1.95 million, from which participating Settlement Class Members will receive payments ("Settlement"). Timothy Miles ("Plaintiff") and his counsel firmly believe the Settlement is fair, reasonable, adequate, and in the best interest of Settlement Class Members. Accordingly, Plaintiff respectfully requests that this Court enter an order preliminarily approving the Settlement. Defendant does not oppose this relief.

## Summary of the Settlement

The Settlement resolves this matter on behalf of the following class ("Settlement Class"):

> All persons in the United States who (a) received a call from Medicredit, Inc. between December 16, 2017 and July 7, 2022 on their cellular telephone, (b) with an artificial or prerecorded voice, (c) for which Medicredit, Inc.'s records contain a 'WN' designation and an 'MC' and/or 'MD' notation.

To compensate Settlement Class Members, Defendant will create a non-reversionary, all-cash common fund in the amount of $1.95 million ("Settlement Fund"). Paid from the Settlement Fund will be (i) compensation to participating Settlement Class Members, (ii) the cost of notice to potential Settlement Class Members, and claims administration, (iii) litigation costs and expenses, for which Plaintiff's counsel will petition this Court, (iv) reasonable attorneys' fees, calculated as a percentage of the Settlement Fund, for which Plaintiff's counsel will petition this Court, and (v) and an incentive award to Plaintiff, for which he will petition this Court (collectively, "Expenses").

Each Settlement Class Member who submits a valid, approved claim will be entitled to a *pro rata* share of the Settlement Fund after deducting the Expenses. Settlement Class Members

1

will be afforded the opportunity to exclude themselves from the Settlement should they choose to do so. Settlement Class Members may also bring any objections to this Court's attention.

Upon this Court's entry of a final judgment, Plaintiff and each non-excluded Settlement Class Member will release certain claims they have relating to calls Defendant made to their cellular telephones.

**Argument**

**I.     This Court should certify the Settlement Class under Rule 23 for settlement purposes.**

To obtain certification of the Settlement Class, Plaintiff must satisfy the four requirements of Rule 23(a), referred to as numerosity, commonality, typicality, and adequacy of representation, as well as Rule 23(b)(3). *See St. Louis Heart Cntr., Inc. v. Vein Cntrs. for Excellence, Inc.*, No. 12-174, 2013 WL 6498245, at *2 (E.D. Mo. Dec. 11, 2013) (certifying TCPA class action). And particularly because Plaintiff seeks certification in the context of a settlement, the requirements of Rule 23(a) and 23(b)(3) are readily satisfied. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

Of note, this Court previously certified two similar TCPA class actions against Defendant for settlement purposes. *See Prater v. Medicredit, Inc.*, No. 4:14-cv-00159-ERW, 2015 WL 8331602, at *2 (E.D. Mo. Dec. 7, 2015) (Webber, J.); *see also Martinez v. Medicredit, Inc.*, No. 4:16-cv-01138-ERW, 2018 WL 2223681 (E.D. Mo. May 15, 2018) (Webber, J.). This Court should do the same here.

    **1.     The members of the Settlement Class are sufficiently numerous.**

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, while the parties do not know the

exact number of Settlement Class Members, Defendant has identified 303,600 telephone numbers that comprise the universe of potential Settlement Class Members. *See* Settlement Agreement, ¶ 2.31. Given as much, there can be no doubt that the Settlement Class contains thousands of members and numerosity is satisfied. *See In re Charter Commc'ns, Inc. Sec. Litig.*, No. 02-1186, 2005 WL 4045741, at *11 (E.D. Mo. June 30, 2005) ("the proposed Settlement Class here consists of several thousand [members] who are geographically dispersed, making joinder impracticable. Thus, the Settlement Class easily satisfies the numerosity requirement."); *see also St. Louis Heart Cntr.*, 2013 WL 6498245, at *6 (numerosity met for proposed TCPA class of "thousands of doctors and medical centers" that received faxes).

    **2.    Questions of law and fact are common to the Settlement Class.**

"Rule 23(a)(2)'s 'commonality' requirement is satisfied if a claim arises out of the same legal or remedial theory." *In re Charter*, 2005 WL 4045741, at *11. "The plaintiff must show that 'a classwide proceeding will generate common answers apt to drive the resolution of the litigation.'" *St. Louis Heart Cntr.*, 2013 WL 6498245, at *6 (quoting *Bennett v. Nucor Corp.*, 656 F.3d 802, 814 (8th Cir. 2011)).

Here, Settlement Class Members' claims stem from the same factual circumstances, in that Defendant allegedly made calls to their cellular telephones, using an artificial or prerecorded voice, which are alleged to have violated the TCPA. *See Head v. Citibank, N.A.*, 340 F.R.D. 145, 151 (D. Ariz. 2022) (noting that a common question is: "Did Citibank call someone whom they were not authorized to call, and play a prerecorded voice during that call, in violation of the TCPA?"). Accordingly, the commonality requirement is satisfied.

    **3.    Plaintiff's claims are typical of the claims of Settlement Class Members.**

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Like commonality, the test for

3

typicality is not onerous. *St. Louis Heart Cntr.*, 2013 WL 6498245, at *7. Simply, "[t]his prerequisite can be met if the claims or defenses all stem from a single event or if the plaintiff can demonstrate that the class shares the same or similar grievances." *Id.*; *see also Kelly v. Phiten USA, Inc.*, 277 F.R.D. 564, 568 (S.D. Iowa 2011) ("The burden is fairly easily met so long as other class members have claims similar to the named plaintiff.").

Here, Defendant placed calls to Plaintiff's cellular telephone, in connection with which it used a prerecorded voice, and Plaintiff asserts that Defendant made similar calls to the other members of the Settlement Class. Plaintiff possesses the same interests, asserts identical claims, and seeks identical relief on behalf of the members of the Settlement Class. As a result, his claims are typical of those of the Class. *See Wesley v. Snap Fin, LLC*, 339 F.R.D. 277, 292-95 (D. Utah 2021) (certifying "wrong number" class action under the TCPA).

**4.     Plaintiff and his counsel will continue to fairly and adequately protect the interests of the Settlement Class.**

Next, the Court must determine if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). As set forth above, Plaintiff's claims are aligned with the claims of the Settlement Class. Therefore, he has every incentive to vigorously pursue their claims, as he has done to date. In addition, Plaintiff retained the services of counsel with significant experience representing plaintiffs in consumer protection class actions, including nationwide TCPA class actions. *See* Declaration of Michael L. Greenwald, attached as Exhibit A, at ¶¶ 9-39; *accord Head*, 340 F.R.D. at 152 (appointing Plaintiff's counsel as class counsel).

Plaintiff and his counsel therefore satisfy Rule 23(a)(4) and 23(g).

**5.     Common questions predominate over any individual issues.**

Plaintiff also satisfies the predominance requirement of Rule 23(b)(3). The predominance factor "tests whether proposed classes are sufficiently cohesive to warrant adjudication by

4

representation." *Amchem*, 521 U.S. at 623. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

Here, the central legal issue before this Court is whether Defendant's calls to Settlement Class Members violated the TCPA. This common question predominates over any individual issues. *See, e.g.*, *Malta v. Fed. Home Loan Mort. Corp.*, No. 10-1290, 2013 WL 444619, at *4 (S.D. Cal. Feb. 5, 2013) ("The central inquiry is whether Wells Fargo violated the TCPA by making calls to the class members. Accordingly, the predominance requirement is met.").

### 6. Class treatment is superior to other available methods for the fair and efficient adjudication of the Settlement Class's claims here.

To determine if the superiority requirement of Rule 23(b)(3) is satisfied, this Court must consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

Consideration of these factors makes plain that resolving Settlement Class Members' claims in one action is the superior way to proceed. *See Wesley*, 339 F.R.D. at 299 ("Where the putative class members' claims are so similar, a class resolution is often superior to resolving each claim individually because it prevents reinventing the wheel for each putative class member."); *St. Louis Heart Center*, 2013 WL 6498245, at *11 ("All in all, a class action is superior to other methods of adjudicating this controversy.").

5

## II.     The Settlement is fair, reasonable, and adequate under Rule 23(e).

Rule 23(e) requires that a court preliminarily evaluate the fairness of a class action settlement:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

Manual For Complex Litigation § 21.632 (4th ed. 2004); *see also* 4 Alba Conte & Herbert B. Newberg, Newberg On Class Actions, § 11.25 (4th ed. 2002).

After the court makes a preliminary fairness evaluation, and notice has been issued, the court must then hold a final fairness hearing to determine whether the proposed settlement is fair, reasonable, and adequate. *See* Manual For Complex Litigation § 21.633-34; Newberg, § 11.25.

As an initial matter, "the settlement enjoys a presumption of fairness." *Hashw v. Dept. Stores Nat'l. Bank*, 182 F. Supp. 3d 935, 943 (D. Minn. 2016) (citing *In re Uponor, Inc. F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013)) ("This is especially true because the settlement was reached through mediation with a third-party neutral, and only after substantial discovery had taken place.").

No matter, and with the understanding that a full fairness determination is not necessary at this preliminary approval stage, the Eighth Circuit identified four factors for consideration in analyzing the fairness, reasonableness, and adequacy of a class action settlement under Rule 23(e): (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the

6

amount of opposition to the settlement. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005); *Van Horn v. Trickey*, 840 F.2d 604, 606 (8th Cir. 1988).

In making its preliminary fairness assessment, the court may also consider "procedural fairness to ensure the settlement is not the product of fraud or collusion," the "experience and opinion of counsel on both sides"—including whether the "settlement resulted from arm's length negotiations, and whether a skilled mediator was involved"—and also "the settlement's timing, including whether discovery proceeded to the point where all parties were fully aware of the merits." *Bredthauer v. Lundstrom*, Nos. 10-3132, 10-3139, 10-326, 2012 WL 4904422, at *3 (D. Neb. Oct. 12, 2012).

As well, Rule 23(e) mandates consideration of several additional factors, including that the class representative and class counsel have adequately represented settlement class members, and that the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e).

Here, each relevant factor supports that the Settlement is fundamentally fair, reasonable, and adequate. And in applying these factors, this Court should be guided by the "long-standing policy favoring settlements of civil actions in federal courts." *In re Charter*, 2005 WL 4045741, at *4 ("this policy is especially applicable to class action litigation"); *accord In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, No. 03-015, 2004 WL 3671053, at *11 (W.D. Mo. Apr. 20, 2004) ("It is the surety of settlement that makes it a favored policy in dispute resolution as compared to unknown dangers and unforeseen hazards of litigation.").

### A.   The parties fairly and honestly negotiated the Settlement.

"A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." *Montgomery v. Cont'l Intermodal Grp.-Trucking LLC*, No. 19-940 GJF, 2021 WL 1339305, at *5 (D.N.M. Apr. 9, 2021) (citing 2 Mclaughlin On

7

Class Actions § 6:7 (8th ed. 2011)); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, No. EDCV 08-482-VAP(OP), 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Milliron v. T-Mobile USA, Inc.*, No. CIV.A. 08-4149 (JLL), 2009 WL 3345762, at *5 (D.N.J. Sept. 10, 2009), *as amended* (Sept. 14, 2009), *aff'd,* 423 F. App'x 131 (3d Cir. 2011) ("[T]he participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.").

Here, the parties reached an agreement to resolve this matter only after mediating with Hon. Diane M. Welsh (Ret.). Noteworthy, Judge Welsh served as a United States magistrate judge for the Eastern District of Pennsylvania. And during her time on the bench, Judge Welsh presided over nearly 1,800 settlement conferences. She is now a highly respected and sought-after mediator with considerable experience with TCPA class actions. *See* https://www.jamsadr.com/welsh/ (last visited Aug. 18, 2022). Accordingly, the Settlement is not the product of collusion, but rather the result of fair, honest, arm's-length negotiations facilitated by an experienced mediator.

> **B.** **The merits of the case, balanced against the amount recovered through the Settlement, supports preliminary approval.**

"The most important consideration in deciding whether a settlement is fair, reasonable, and adequate is the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement." *In re Wireless*, 396 F.3d at 933. Here, the parties vehemently disagree about the merits, as noted by the motion practice to date. *See* ECF No. 23 (Defendant's motion to dismiss); ECF No. 35 (Defendant's motion for judgment on the pleadings). They also disagree regarding whether Plaintiff could satisfy the elements of Rule 23 in an adversarial proceeding. Given these considerations, preliminary approval of the settlement is appropriate.

In evaluating the fairness of the consideration offered in settlement, it is not the role of the

court to second-guess the negotiated resolution of the parties. The Eighth Circuit has noted: "We have recognized that a class action settlement is a private contract negotiated between the parties. Rule 23(e) requires the court to intrude on that private consensual agreement merely to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *In re Wireless*, 396 F.3d at 934. That is, the issue is not whether the Settlement could have been "better," but whether it is fair: "Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.

Here, the Settlement provides substantial cash relief to participating Settlement Class Members. The Settlement Fund will be non-reversionary—meaning no money will return to Defendant—and amounts to $1.95 million. Given, therefore, that approximately 303,600 telephone numbers comprise the universe of potential Settlement Class Members, *see* Settlement Agreement, ¶ 2.31, the raw, per-potential Settlement Class Member value is greater than $6.42 ($1,950,000 / 303,600 = $6.42). Of course, an unknown number of the 303,600 telephone numbers potentially at issue truly received wrong number calls from Medicredit.

And this is in line with the raw, per-potential settlement class member value of many analogous TCPA class action settlements. *See, e.g.*, *Williams v. Bluestem Brands, Inc.*, No. 17-1971, 2019 WL 1450090, at *2 (M.D. Fla. Apr. 2, 2019) (approximately $7 per potential class member); *Prather v. Wells Fargo Bank, N.A.*, No. 15-4231, 2017 WL 770132 (N.D. Ga. Feb. 24, 2017) ($4.65 per potential class member); *Luster v. Wells Fargo Dealer Servs., Inc.*, No. 15-1058, ECF No. 60 (N.D. Ga. Feb. 23, 2017) ($4.65 per potential class member); *James v. JPMorgan Chase Bank, N.A.*, No. 15-2424, 2016 WL 6908118, at *1 (M.D. Fla. Nov. 22, 2016) ($5.55 per potential class member); *Cross v. Wells Fargo Bank, N.A.*, No. 15-cv-1270, 2016 WL 5109533

9

(N.D. Ga. Sept. 13, 2016) ($4.75 per potential class member); *Markos v. Wells Fargo Bank, N.A.*, No. 15-1156, 2016 WL 4708028 (N.D. Ga. Sept. 7, 2016) ($4.95 per potential class member); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) ($2.95 per potential class member); *Picchi v. World Fin. Network Bank*, No. 11-61797 (S.D. Fla. Jan. 30, 2015) ($2.63 per potential class member); *Duke v. Bank of Am., N.A.*, No. 12-4009, ECF Nos. 51, 59 (N.D. Cal. Feb. 19, 2014) ($4.15 per potential class member).

As well, the Settlement is expected to be on par with, on a per-claimant recovery basis, other recently approved TCPA class action settlements. Indeed, Plaintiff's counsel estimates—based on historical claims rates and the likely number of *bona fide* Settlement Class Members[1]—that after deducting the Expenses participating Settlement Class Members will receive between $50 and $100 each. This would be in line with, and in some cases surpass, comparable figures in other approved TCPA class settlements. *See, e.g., Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ($52.50 per claimant); *Hashw*, 182 F. Supp. 3d at 947 ($33.20 per claimant); *Wright v. Nationstar Mortg. LLC*, No. 14-10457, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016) (approximately $45 per claimant); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (finding that $34.60 per person falls "within the range of recoveries" in a TCPA class action); *Rose v. Bank of Am. Corp.*, Nos. 11-2390, 12-4009, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (claimants received between $20 and $40 each); *Steinfeld v. Discover Fin. Servs.*, No. 12-1118, 2014 WL 1309352, at *7 (N.D. Cal. Mar. 31, 2014) (approving a settlement that distributed less than $50 per claimant, *see* ECF No. 101).

---

[1] Because this case involves calls to alleged wrong numbers, the true number of Settlement Class Members who received calls from Medicredit despite not having an account in collections is unknown. For this reason, Settlement Class Members must submit a short, straightforward claim form to participate in any recovery.

Additionally significant, the court in *Markos v. Wells Fargo Bank, N.A.* characterized a $24 per-claimant recovery in a TCPA class action as "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter." No. 15-1156, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017).

And what's more, the Settlement provides Settlement Class Members with real monetary relief, despite the purely statutory damages at issue—damages that courts have deemed too small to incentivize individual actions. *See, e.g.*, *Palm Beach Golf Center-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 699 (S.D. Fla. 2015) (noting that the small potential recovery in individual TCPA actions reduced the likelihood that class members will bring suit); *St. Louis Heart Cntr.*, 2013 WL 6498245, at *11 (explaining that because the statutory damages available to each individual class member are small, it is unlikely that class members have an interest in individually controlling the prosecution of separate actions). Therefore, because of the Settlement, participating Settlement Class Members will receive money they otherwise would have not likely pursued on their own.

C. **The complexity and expense of future litigation supports preliminary approval.**

The Settlement constitutes an objectively favorable result for Settlement Class Members and outweighs the mere possibility of future relief after protracted and expensive litigation. *See Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 303 (S.D. Miss. 2014) ("Although this Action was actively litigated for over two years, recovery by any means other than settlement would require additional years of litigation."). Indeed, "as noted above, class certification would have proved a significant obstacle for [Plaintiff] to surmount given the issue of consent. Had the Court certified a class, it has little doubt Defendant[] would have attempted to appeal that certification to the Eighth Circuit, contributing further to the time and expense necessary to litigate." *Hashw*,

11

182 F. Supp. 3d at 945. Moreover, "assuming that such a certification order withstood scrutiny, proving liability and damages at trial would have been both costly and tedious." *Id*.

By agreeing to settle now, the parties avoid expensive, protracted future litigation. This factor supports preliminary approval. *See Keil v. Lopez*, 862 F.3d 685, 698 (8th Cir. 2017) (noting that the "complexity and expense of future litigation" weighed in favor of settlement approval).

### D. The unopposed nature of Plaintiff's request favors preliminary approval of the Settlement.

The lack of opposition to the Settlement (at this time) favors preliminary approval. *See Van Horn*, 840 F.2d at 606. While Plaintiff's motion for preliminary approval is unopposed, Settlement Class Members will be provided with an opportunity to lodge any objections in response to class notice. This factor therefore could play a more important role in connection with final approval, depending on whether, and if so how many, Settlement Class Members object.[2]

### E. The remaining Rule 23(c)(2) factors support preliminary approval.

Consideration of the factors set forth in Rule 23(e) likewise supports preliminary approval. More specifically, Rule 23(e)(2) requires courts to consider whether (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be

---

[2] The last *Van Horn* factor—Defendant's financial position—likewise favors preliminary approval. First, there is no indication here that Defendant's financial condition would prevent it from satisfying the negotiated settlement fund. *In re Wireless*, 396 F.3d at 933; *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) (confirming "defendant's ability to pay" in affirming reasonableness of class settlement). But the lack of applicable insurance coverage limits future potential recovery, further favoring the settlement reached here.

identified under Rule 23(e)(3);[3] and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

Several of these factors—such as that the proposal was negotiated at arm's length and that the relief provided to the Settlement Class is adequate—are subsumed within the above discussion of the *Van Horn* factors, and Plaintiff does not address them again here.

With respect to Plaintiff and his counsel, Plaintiff was, throughout this matter, committed to acting in the best interests of Settlement Class Members. *See* Ex. A at ¶¶ 45-48. He stayed updated on the case and spoke with his counsel about it regularly. *Id*. He produced documents, responded to discovery requests, sat for a deposition, and attended mediation. *Id*. And he remained prepared to, and did, make all necessary decisions required of him in the best interests of Settlement Class Members. *Id*.

Similarly, Plaintiff's counsel—who are experienced in complex litigation and have served as class counsel on numerous occasions, zealously litigated on behalf of Plaintiff and Settlement Class Members against sophisticated and experienced defense counsel. *See id*. at ¶¶ 9-44. And having done so, Plaintiff and his counsel obtained a meaningful recovery for Settlement Class Members.

Rule 23(e)(2)(D) also requires a court to confirm that a class action settlement treats all class members equitably. The Advisory Committee's Note to Fed. R. Civ. P. 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."

---

[3] The only agreement between the parties is the Settlement Agreement, which is appended to Exhibit A. *See* Fed. R. Civ. P. 23(e)(3) ("The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.").

13

Here, all Settlement Class Members have the same legal claims. Correspondingly, the Settlement provides that each participating Settlement Class Member will receive an equal portion of the Settlement Fund, after deducting the Expenses. Additionally, the release affects each Settlement Class Member in the same way. As a result, consideration of the Rule 23(e)(2) factors supports preliminary approval.

**III.   The proposed notice program is standard in TCPA class actions like this one and complies with Rule 23.**

Pursuant to Rule 23(e), a court must, upon preliminary approval, "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. This notice must be the "best notice practicable," *see* Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Here, and after a competitive bid process, the parties agreed to a robust notice program to be administered by a well-respected third-party claims administrator, Kroll Settlement Administration ("Kroll"). Through the notice program, Kroll will use all reasonable efforts to provide direct mail notice to potential Settlement Class Members, in the forms attached as exhibits to the Settlement Agreement. *See* Ex A.

To start, Kroll will perform a reverse lookup process for those telephone numbers identified by Defendant to ascertain names and addresses of potential Settlement Class Members.

Upon receipt of contact information for potential Settlement Class Members, Kroll will run that information through the National Change of Address system, which updates addresses for all people who submitted a change of address with the U.S. Postal Service within the past four years. Kroll will then send direct mail notice by postcard, with a detachable claim form, to potential Settlement Class Members, where possible. It will also issue publication notice through social

14

media, directed to the telephone numbers associated with potential Settlement Class Members.

Separately, Kroll will establish a dedicated settlement website, through which Settlement Class Members can review relevant documents, review the summary question-and-answer notice, and submit claims. In addition, Kroll will establish a toll-free telephone number.

To submit a valid claim, a Settlement Class Member must state that he or she received one or more prerecorded voice calls from Defendant on his or her cellular telephone during the class period, and that he or she does not have an account in collections with Defendant.

The ultimate goal of the notice program is to make it as convenient as possible for deserving Settlement Class Members to learn of, and participate in, the Settlement. *See, e.g.*, *Williams*, 2019 WL 1450090, at *5 (approving similar notice plan in a TCPA class action). This proposed notice program is consistent with those previously approved by this Court in *Prater* and *Martinez*.

The subject notice program, therefore, complies with Rule 23 and due process. *See* Fed. R. Civ. P. 23(c)(2)(B); *see also Bonoan v. Adobe, Inc.*, No. 3:19-CV-01068-RS, 2020 WL 6018934, at *2 (N.D. Cal. Oct. 9, 2020) ("This Court approves the form and substance of the proposed notice of the class action settlement, which includes postcard notice, publication notice, a physical claim form, and the question-and-answer notice and online claim form, which will appear on the dedicated settlement website.").

**Conclusion**

Plaintiff respectfully requests that this Court enter the accompanying order—agreed to by the parties—certifying the Settlement Class for settlement purposes; preliminarily approving the Settlement as fair, reasonable, and adequate; appointing Plaintiff as the class representative and Plaintiff's counsel as class counsel; approving and directing notice to Settlement Class Members; and setting a final fairness hearing.

15

Dated: August 19, 2022

/s/ *Michael L. Greenwald*
Michael L. Greenwald (*pro hac vice*)
Aaron D. Radbil (*pro hac vice*)
Jesse S. Johnson (*pro hac vice*)
GREENWALD DAVIDSON RADBIL PLLC
5550 Glades Road, Suite 500
Boca Raton, Florida 33431
Phone: (561) 826-5477
mgreenwald@gdrlawfirm.com
aradbil@gdrlawfirm.com
jjohnson@gdrlawfirm.com

Anthony LaCroix
LaCROIX LAW FIRM, LLC
1600 Genessee, Suite 956
Kansas City, MO  64102
Phone: (816) 399-4380
Tony@lacroixlawkc.com

*Counsel for Plaintiff and the Settlement Class*